Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorney for Plaintiff (co-counsel listed below)*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sana Mujahid, | No. 2:19-cv-5454-PHX-NVW |
|        Plaintiff, | |
| vs. | Hon. Neil v. Wake |
| | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Divvymed, LLC d/b/a Divvydose, | |
|        Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiff Sana Mujahid ("Plaintiff") and Defendant DivvyMed, LLC d/b/a Divvydose, LLC ("Defendant") (the Plaintiff and Defendant collectively referred to herein as the "Parties") have reached a class action settlement of this matter.[1] The Settlement Agreement includes the establishment of a $750,000 Settlement Fund to be distributed to Settlement Class Members who file a valid claim after payment of notice and administration costs, Settlement Class Counsel fees, and a Service Payment to the Plaintiff.[2] There is <u>no reverter</u> to the Defendant of any portion of the Settlement Fund. Notice will be effectuated through e-mails and postcards sent directly to Settlement Class Members identified in records obtained in discovery and a website through which Claim Forms may be obtained or directly submitted.

The Settlement Agreement was reached by counsel with a keen understanding of the merits of the claims and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the settlement; (2) provisionally

---

[1] The Defendant does not oppose this motion insofar as it supports the settlement. The Defendant does not concede or admit Plaintiff's assertions.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Settlement Agreement" or "Agreement"), attached as <u>Exhibit 1</u>.

certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Settlement

Class Counsel; (4) appoint Plaintiff as the representative of the Settlement Class; (5)

approve the proposed notice plan, notices, and Claim Form; and (6) schedule the Final

Approval Hearing and related dates as proposed.

## II.    NATURE AND BACKGROUND OF THE CASE

In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted

telemarketing . . . can be an intrusive invasion of privacy[.]"  Pub. L. No. 102-243, 105

Stat. 2394, at § 2(5) (1991) (codified at 47 U.S.C. § 227). Notwithstanding the fact that

the TCPA is more than 25 years old,"[m]onth after month, unwanted robocalls and texts,

both telemarketing and informational, top the list of consumer complaints received by the

[Federal Communications] Commission."[3]

The TCPA prohibits, *inter alia*, initiating any telephone solicitation to a cell phone

using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b)(1). The

TCPA also makes it unlawful to receive more than one telephone call within any twelve-

month period by or on behalf of the same entity after placing your number on the

National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5). Finally, the TCPA prohibits

making any telemarketing calls unless a company has adequate policies and procedures in

place in compliance with 47 CFR § 64.1200(d), which requires a company to keep a

---

[3] *Omnibus TCPA Order*, 2015 WL 4387780, ¶ 1 (July 10, 2015).

3

written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6). The TCPA provides a private cause of action to persons who receive such calls. *Id.* and 47 U.S.C. § 227(b)(3). A caller has a complete defense to a TCPA claim if it can demonstrate that it made the subject calls with the prior express consent of the called party. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).

DivvyMed is an online pharmacy that allegedly utilizes third parties and their vendors to place calls on its behalf. This litigation has focused on the conduct of one such agent and vendor, Multira, Inc. and 1564 Ventures, Inc. 1564 Ventures allegedly placed the pre-recorded telemarketing call, which was then transferred directly to DivvyMed's own call center in hopes of obtaining a new client. In discovery, the parties exchanged information regarding DivvyMed's relationship with Multira, its efforts to comply with the TCPA as well as documents that identify putative class members. The Plaintiff also issued subpoenas to Multira, 1564 Ventures as well as the pre-recorded calling provider used by 1564 Ventures. In total, the Plaintiff obtained over 10,000 pages of production.

On April 3, 2020, the parties mediated this matter with Jill Sperber of Judicate West and Sperber Dispute Resolution in Santa Ana, CA. While that mediation did not end with a settlement, the parties continued negotiations overseen by Ms. Sperber that culminated in the Settlement Agreement before this Court.

1

2

## III.    THE PROPOSED SETTLEMENT

Pursuant to the Settlement Agreement, Plaintiff seeks certification of the following

Settlement Class for settlement purposes only:

> All persons in the United States who were called by 1564
> Ventures, Inc. with a recorded message about Divvydose
> during the Class Period.

The Class Period is June 26, 2019 through November 1, 2019. *See* Ex. 1 at ¶ 1.8. The

proposed settlement encompasses 28,346 individuals.

The proposed settlement establishes a non-reversionary $750,000.00 Settlement

Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement

Class Members; (2) settlement administration expenses; (3) a Fees, Costs, and Expenses

Award to Settlement Class Counsel of one-third of the total amount of the Settlement

Fund ($250,000.00) in addition to out of pocket expenses (up to $12,375.00), subject to

Court approval; and (4) a court-approved Service Payment to the Plaintiff of up to

$5,000. Each Settlement Class Member who submits a valid claim shall be entitled to

receive an equal *pro rata* amount of the Settlement Fund after all settlement

administrative expenses, Service Payment, and the Fees, Costs, and Expenses Award are

paid out of the Settlement Fund based on the amount of calls they received. If the Fees,

Costs, and Expenses Award, Service Payment and settlement administration expenses are

approved as requested, Plaintiff's counsel estimates that the average Settlement Class

Member payment would be approximately $150.00.

### A. Opt-Out and Objection Procedures

Persons in the Settlement Class will have the opportunity to exclude themselves from the settlement or object to its approval. *See* Ex. 1 at ¶ 6. The procedures and deadlines for filing requests for exclusion and objections will be conspicuously listed in the Class notice and on the Settlement Website. The Class notices informs Settlement Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing. The notices also inform Settlement Class Members that they will be bound by the release contained in the Settlement unless they timely exercise their opt-out right.

### B. Release

The release is appropriately tailored to this case involving alleged violations like those alleged and is limited to those Settlement Class Members identified in the Class, which is compiled of data exchanged in discovery. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the settlement will release DivvyMed from any and all telephone calling claims as well as 1564 Ventures and Multira, but only for calls they made on behalf of DivvyMed and is further limited only to the individuals contained on the Class List. *See* Ex. 1 at ¶ 2.2

### C. Plaintiff Service Payment

If approved by the Court, the Plaintiff will receive a Service Payment of $5,000 from the Settlement Fund. This award will compensate Plaintiff for her time and effort

and for the risk she undertook in prosecuting this case as well as participating in discovery.

### D. Attorneys' Fees, Costs, and Expenses Award

If the settlement receives preliminary approval, Plaintiff's counsel will apply to the Court for a Fees, Costs, and Expenses Award in the amount of up to one-third of the total amount of the Settlement Fund in addition to out of pocket expenses of up to $12,375.00. A Fees, Costs, and Expenses Award will compensate Plaintiff's counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the settlement, securing Court approval of the settlement, making sure the settlement is fairly implemented, and obtaining dismissal of the action.

### E. Remaining Funds

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, settlement administration expenses, and any Fees, Costs, and Expenses Award and Service Payment will be distributed to a Court-approved *cy pres* recipient. The Parties propose The National Consumer Law Center as an appropriate recipient. *See* Ex. 1 at ¶ 1.10. However, there will only be a *cy pres* recipient if a second *pro rata* distribution to Authorized Claimants of the Settlement Fund is not feasible or if there are remaining funds after the second distribution. *See* Ex. 1 at ¶ 3.7.

1

2

## IV.    NOTICE AND SETTLEMENT ADMINISTRATION

3

4      Settlement administration expenses will be exclusively paid from the Settlement

5  Fund. The Parties have agreed upon, and propose that the Court approve, the nationally

6  recognized class action administration firm Kurtzman Carson Consultants LLC (KCC) to

7  be the Settlement Administrator, to implement the Class notice, and to administer the

8  settlement, subject to review by counsel and the Court. *See* Ex. 1 at ¶ 1.32. KCC

9  estimates the costs to administer the settlement will be $56,398.00.

10      Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court

11  must order the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does

12  not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18

13  F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably

14  calculated, under all the circumstances, to apprise interested parties of the pendency of

15  the action and afford them an opportunity to present their objections." *Mullane v. Central*

16  *Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). "Adequate notice is critical to

17  court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150

18  F.3d 1011, 1025 (9th Cir. 1998) ("*Hanlon*").

19      Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a

20  reasonable manner to all class members who would be bound by the proposal."

21  Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice. The

22  notice must concisely and clearly state in plain, easily understood language: (i) the

23  nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or

24

25

26

27

28

defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Agreement provides that the Settlement Administrator shall disseminate or arrange for the dissemination of Class notice via Email Notice and Postcard Notice in a form materially consistent with Exhibits 3 and 4 to the Agreement. Those notices will also include direction to the Long-Form Notice, which will be posted on the Settlement Website. The Class notice here satisfies each of the requirements of Rule 23(c)(2)(B) above. Further, mailed postcard notice has routinely been held to be adequate notice to a settlement class. *See Schaffer v. Litton Loan Servicing, LP*, CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class members were sent postcards that directed them to a settlement website); *Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) (final approval of class settlement using postcard notice and settlement website).

The Parties possess records of all the telephone numbers called during the alleged marketing campaigns on the Call Record Database. The Parties have obtained a Class List in discovery that includes name, email address, and address information for nearly all Class Members. For each Settlement Class Member for whom no email address was included in the Class List, the Settlement Administrator shall

9

perform an email appends through a commercially available database in an attempt to identify an email address for such Settlement Class Member.  For each Settlement Class Member for whom no postal address was included in the Class List, the Settlement Administrator shall perform a postal address appends through a commercially available database in an attempt to identify a postal address for such Settlement Class Member. The Settlement Administrator shall attempt to update the last known addresses of the Class Members through the National Change of Address (NCOA) database. To the extent any physical addresses identified through reverse look-up are no longer valid, the Settlement Administrator will send Class Notice to any forwarding addresses that are provided. *See generally Barani v. Wells Fargo Bank, N.A.*, Case No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving settlement in TCPA class action using reverse lookup to locate class members).

The notices and settlement documents will be disseminated and posted on a Settlement Website sufficiently prior to the Final Approval Hearing to give Settlement Class Members the opportunity to object to the settlement, or to opt out and preserve their rights. Specifically, Settlement Class Members will have 60 days from the time dissemination of Class notice has been completed to opt out of the settlement or object. *Cf. Torrisi v. Tucson Electric Power Co*., 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) (citing *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before the deadline

for opting out of the settlement)). Further, the Settlement Website shall be maintained and accessible to Settlement Class Members during this time and through the conclusion of the settlement proceedings in this case.

This notice program was designed to meaningfully reach the largest number of Settlement Class Members possible. Since the calls at issue were made within the past year and the Parties have additional names and addresses correlating with a significant number of the Settlement Class Members, and the ability to identify Settlement Class Members should be high, i.e., Email Notice and Postcard Notice will likely reach most Settlement Class Members. The concurrent dissemination of the Long-Form Notice on the Settlement Website, combined with the Email Notice and Postcard Notice, satisfies the requirements of due process and constitutes the best notice practicable under the circumstances. The Settlement Administrator shall prepare and file a declaration prior to the Final Approval Hearing certifying that the notice program has been properly administered in accordance with this Agreement, this Court's orders, and as described herein.

## V.     The Class Should be Preliminarily Certified for Purposes of Settlement

"At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice [of a proposed settlement]." *In re Imprelis Herbicide*, 2013 U.S. Dist. LEXIS 18332, at *8 (citing MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004) ("The judge should make a preliminary determination that the

proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).")).

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met. *Id.* As explained below, class certification is appropriate here because the proposed settlement meets the requirements of Rule 23(a) and Rule 23(b)(3) for settlement purposes.

In the circumstances here, the requirements of Rule 23 are readily met. FED. R. CIV. P. 23(a) requires that plaintiffs demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### A. Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir.

1964) (citation omitted). Numerosity is satisfied here as the records obtained in discovery indicate that 28,346 individuals are in the Settlement Class.

### B. Commonality

The commonality requirement is met where "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). *See Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, the claims asserted by Plaintiff are predicated on allegations that DivvyMed engaged in unlawful marketing practices, when third parties made calls to Settlement Class Members' telephones through the use of an automatic telephone dialing system or through pre-recorded or artificial voice messages without obtaining the requisite prior express consent, or by the fact that such calls were made on their behalf. As such, Plaintiff contends that issues of fact and law exist that are common to all Settlement Class Members, such as:

- Whether DivvyMed is vicariously liable for the conduct of their alleged agents.

- Whether the dialing systems used constituted "Automatic Telephone Dialing Systems" as that term is defined under the TCPA;

- Whether the call recipients had provided their prior express consent prior to being called;

- Whether DivvyMed's alleged violations were knowing or willful; and

- Whether Settlement Class Members are entitled to statutory damages under the TCPA.

These common questions are wholly sufficient to satisfy the commonality requirement for settlement purposes.

### C. *Typicality*

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, typicality is met as Plaintiff claims that DivvyMed's alleged agent improperly engaged in telemarketing using an ATDS or an artificial or pre-recorded voice to contact Settlement Class Member's telephones without obtaining prior express consent and is thus liable for statutory damages under the TCPA. *Accord Gehrich v. Chase Bank U.S.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) (TCPA case; "The proposed class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call … from [defendant] to her cell phone."); *Grannan v. Alliant Law Group, P.C.*, No. 10-cv-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *11 (N.D. Cal. Jan. 24, 2012) ("The claims of the Named Plaintiff are typical of the Settlement Class, and arise out of the TCPA violations committed by defendant Alliant.").

For settlement purposes, Plaintiff is typical of the absent Settlement Class Members because they were allegedly subjected to the same DivvyMed practices, they

14

suffered from the same injuries, and because Plaintiff and the Settlement Class will

benefit from the relief provided by the settlement.

### D. Adequacy of Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court

must measure the adequacy of representation by two standards: "(1) Do the

representative plaintiffs and their counsel have any conflicts of interest with other

class members, and (2) will the representative plaintiffs and their counsel prosecute

the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D.

at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiff and Settlement Class Counsel have no conflicts of interest with other Class

Members because, for purposes of the settlement, Plaintiff's claims are typical of

those of other Settlement Class Members. In addition, Plaintiff and Settlement Class

Counsel have been prosecuting this litigation vigorously on behalf of the Class. Plaintiff

and Class Members share the common goal of protecting and improving consumer

and privacy rights throughout the nation, and there is no conflict among them. Settlement

Class Counsel have extensive experience in consumer litigation, including the

prosecution of class actions seeking to protect privacy and consumer rights,

including TCPA actions. *See* <u>Exhibit 2</u>, Affidavits of Settlement Class Counsel.

Settlement Class Counsel is qualified to represent the interests of the Class. Rule 23(a)(4)

is therefore satisfied for purposes of certifying a settlement class.

1

2

***E.  Rule 23(b)(3)'s requirements are satisfied.***

3

4

      ***a.*  Predominance**

5

6

      The Rule 23(b)(3) predominance inquiry measures whether the class is sufficiently

7

cohesive to warrant certification. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623

8

(1997)). The inquiry focuses on whether the class is "sufficiently cohesive to warrant

9

adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*

10

*v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question is

11

"'the notion that the adjudication of common issues will help achieve judicial economy.'"

12

*Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation

13

omitted), amended, 273 F. 3d 1266 (9th Cir. 2001). In this case, common legal issues

14

predominate. All claims arise under TCPA and seek statutory damages. The calls to all

15

Class Members promoted DivvyMed. The calls to all Class Members are identified on the

16

Call Record Database.  Whether or not this technology implicates the TCPA is a common

17

question of fact and law that relates to all Class Members. Whether or not DivvyMed

18

would be vicariously liable for the calling conduct will not cause predominance issues as

19

the conduct as it relates to Class Members is identical for purposes of an agency analysis.

20

      Frequently in TCPA cases, defendants attempt to show that class members

21

provided prior express written consent to receive telemarketing calls, and that

22

determining the validity of such consent requires consumer by consumer factual "mini-

23

trials." Here, even though prior express written consent is undisputedly an affirmative

24

defense, the Plaintiff contends that she has conclusively disproven the only consent

25

26

27

28

theory offered. In any event, the Plaintiff can attack any asserted consent defense using common proof. *See Stern v. Docircle, Inc.,* 2014 U.S. Dist. LEXIS 17949 *20 (C.D. Cal. Jan. 29, 2014) (granting TCPA class certification and noting that consent defenses do not defeat predominance where consent will be proved or disproved on evidence and theories applicable to the entire class); *Van Patten v. Vertical Fitness Group, LLC,* 2013 U.S. Dist. LEXIS 189845 *16-18 (S.D. Cal. Nov. 8, 2013) (granting TCPA class certification and explaining that where consent defenses are subject to common proof individual issues do not predominate over common ones).

### *b.* Superiority

The other requirement of Rule 23(b)(3) is the superiority requirement, *i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Here, the settlement provides redress for Settlement Class Members who individually may have potential damages of several thousand dollars at most and who thus are economically foreclosed from otherwise pursuing any relief. Notably, the TCPA does not allow for the recovery of attorneys' fees. To the extent Settlement Class Members did pursue litigation outside of the class context, the settlement would avoid

17

potential individual cases that could be filed by the thousands of Settlement Class

Members for the same claims asserted here.

Unsurprisingly, courts routinely find class actions to be the superior method of

adjudicating claims in the TCPA context. *See e.g. Sandusky Wellness Ctr., LLC v.*

*Wagner Wellness, Inc.,* 2014 U.S. Dist. LEXIS 166275, 14-15 (N.D. Ohio Dec. 1, 2014)

("This type of case weighs in favor of the class action as a superior device. Under the

TCPA, the maximum recovery for each class member is $1,500, and it does not allow for

fee shifting. Hence, individual class members are unlikely to litigate TCPA claims.") As

one federal court found while certifying a TCPA case:

> Jurists and commentators have long debated the merits of the modern class
> action and the public policies behind Rule 23…It is the view of this Court
> that the instant case highlights one of the strongest justifications for the class
> action device: its regulatory function…A statute such as the TCPA, which
> provides for a relatively small recovery for individual violations but is
> designed to deter conduct directed against a large number of individuals, can
> be effectively enforced only if consumers have available a mechanism that
> makes it economically feasible to bring their claims. Without the prospect of
> a class action suit, corporations balancing the costs and benefits of violating
> the TCPA are unlikely to be deterred because individual claims will not
> impose the level of liability that would outweigh the potential benefits of
> violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, 2015 U.S. Dist. LEXIS 129495, 37-38

(S.D. Cal. Sept. 24, 2015). The proposed class meets the superiority requirement of Rule

23(b)(3).

**VI.    Preliminary Approval of the Proposed Settlement is Warranted**

The settlement of a class action requires court approval. FED. R. CIV. P. 23(e)(2). Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, or opt out of the settlement. *See* FED. R. CIV. P. 23(c)(3), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing. *See* FED. R. CIV. P. 23(e)(1)(B). If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval. FED. R. CIV. P. 23(e)(2).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further

litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ." *Hanlon* at 1026. Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.). Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004). Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See., e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness). The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

Based on these standards, Plaintiff respectfully submits that, for the reasons detailed below, the Court should preliminarily approve the proposed settlement as fair, reasonable and adequate. Under the Settlement Agreement, it is anticipated that Authorized Claimants will each receive approximately $150. The Parties have designed a

21

1  very simple claim process in an order to maximize the number of Settlement Class

2  Members who submit claims.

3      The value of the settlement far exceeds other TCPA settlements. For example, in

4  *Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS

5  141044 (E.D. Pa. Oct. 12, 2016), the Court approved a TCPA class action settlement that

6  provided for payments of $27 per claimant. There, the court found that "[t]his amount is

7  consistent with other class action settlements under the Act." *Id.* at *23 (citing, *e.g.*,

8  *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23,

9  2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015)

10  ($34.60); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS

11  121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)).

12      Similarly, in *Gehrich*, 316 F.R.D. 215, another court approved a TCPA class

13  action settlement of $34 million. There, the court found that while "[t]he theoretical

14  recovery per [class] member is about $1.00", "[t]he actual recovery per claimant is

15  approximately $52.50." *Id.* at 23. Although "that recovery is well below the $500

16  statutory recovery available for each call", the court found that "the recovery falls well

17  within the range of recoveries in other recent TCPA class actions." *Id.* As the court in

18  *Gehrich* held, "'[t]he essential point here is that the court should not 'reject[]' a

19  settlement 'solely because it does not provide a complete victory to plaintiffs,' for 'the

20  essence of settlement is compromise.'" *Id.* (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th

21  Cir. 1996)). "An acceptable settlement is properly 'a bilateral exchange ... where both

22  sides gain as well as lose something.'" *Id.* (quoting *In re Gen. Motors Corp. Engine*

*Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir. 1979)). Moreover, the *Gehrich* court

reasoned:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [Defendant], for its part, buys peace and mitigates risk. However improbable it may be, complete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant]. Even assuming (conservatively and unrealistically) only one violation per class member, if Plaintiffs won a complete victory, [defendant] Chase would owe $16.1 billion, and $48.4 billion if the jury found that Chase's violations were knowing or willful. A $52.50 recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.

*Id.* at 228.

While DivvyMed has agreed to settle, it was not without significant defenses.

First, there is a high chance the TCPA is reviewed by the Supreme Court in *Am. Ass'n of*

*Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (*Barr v. Am. Ass'n of*

*Political Consultants, Inc.*, No. 19- 631 (petition for cert filed Nov. 14, 2019)) was

recently taken up by the Supreme Court. The cases challenges the validity of the entire

TCPA statute on First Amendment grounds, and the challenge came very close to

invalidating the statutes during the appeals. While the Ninth Circuit and Fourth Circuit

both upheld the validity of the TCPA by severing a recent 2015 amendment that

otherwise may have rendered the statute unconstitutional, there is no guarantee the

Supreme Court will agree with these interpretations. In fact, a number of district courts

have actually stayed TCPA cases pending *Barr. Lindenbaum v. Realgy, LLC*, 19-cv-2862

(N.D. Ohio March 19, 2020) (ECF No. 16); *Nelson v. PMC Home & Auto Ins. Agency*

23

*LLC*, 19-cv-1387 (D.S.C. March 10, 2020) (ECF No. 52); *Jones v. USHealth Grp., Inc.,* 19-cv-2534 (D. Kan. March 12, 2020) (ECF No. 53); *Meyers v. Facebook, Inc.,* 18-cv-0062 (N.D. Cal. Jan. 24, 2020). Of course, if the TCPA is held to be unconstitutional, there would have been no recovery for any Class Members.

Second, the Circuit decision of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) is currently the subject of a SCOTUS Petition for Cert, which is under review. The dialing system allegedly used by 1564 Ventures is less likely to be found to be an ATDS in the 3rd and 11th Circuit due to recent developments in those Circuits. Specifically, those decisions are *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3rd Cir. 2018), and *Glasser v. Hilton Grand Vacations Company, LLC*, 2020 WL 415811 (11th Cir. Jan. 27, 2020). Thses cases should be considered a significant risk if the case here were litigated to judgment, because there was a high likelihood that, given the split in authority, an appeal could result in Supreme Court review on this issue, or alternatively, Supreme Court review could occur during pendency of litigation which was likely to result in a less favorable ATDS interpretation.

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012)

1   (certifying a class in a TCPA action and finding no evidence supported the view that

2   issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line,*

3   *Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

4

5          Even if the class were certified, the Plaintiff would still have a substantial obstacle

6   regarding DivvyMed's vicarious liability for the alleged conduct of the vendors. The

7   Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 193 L. Ed. 2d 571

8   (2016), held traditional agency and vicarious liability principles are required in order to

9   be found liable under the TCPA. However, DivvyMed did not have contractual privity

10  with the entity that physically initiated the calls, which would make such a finding more

11  difficult. Defendants have argued that in the TCPA context the test used by the Ninth

12  Circuit to determine whether a principal who has hired third-party telemarketers,

13  exercises sufficient control to be held vicariously liable under the TCPA mirrors the test

14  used to determine if an employer may be held liable for the actions of its employees

15  including:

16

17         1) the control exerted by the employer, 2) whether the one employed is
           engaged in a distinct occupation, 3) whether the work is normally done under
18         the supervision of an employer, 4) the skill required, 5) whether the employer
           supplies tools and instrumentalities [and the place of work], 6) the length of
19         time employed, 7) whether payment is by time or by the job, 8) whether the
           work is in the regular business of the employer, 9) the subjective intent of the
20         parties, and 10) whether the employer is or is not in business.

21

22  *Jones v. Royal Admin. Servs., Inc.,* 887 F.3d 443, 450 (9th Cir. 2018) (citation omitted).

23  In *Royal*, the Ninth Circuit held that the defendant did not have enough authority to

24  control the telemarketers' work to hold it vicariously liable as if it were an employer of

25  the telemarketers. *Id.* at 451–53. The Plaintiff would face a similar challenge here. As an

26

27

28

initial matter, since Divvydose contracted with Multira, who then subcontracted to 1564 Ventures, Divvydose did not have any contact with 1564 Ventures. With respect to Multira, the Royal factors preclude the application of vicarious liability. First, as in Royal, Divvydose did not have the right to control the hours the telemarketers worked, nor did it set quotas for the number of calls or sales the telemarketers had to make. *Id.* at 451 (citation omitted). Second, Multira "was an independent business, separate and apart from [Divvydose]". *Id.* at 452. Third, as in *Royal*, the calls at-issue were not normally done under the supervision of Divvydose. *Id.* Moreover, a Divvydose "employee did not directly supervise [Multira]'s calls." *Id.* Moreover, Multira or 1564 Ventures "provided far more tools and instrumentalities, including its own phones, computers, furniture, and office space." *Id.* Sixth, the contract between Divvydose and Multira was signed on June 25, 2019, and Divvydose only used Multira and 1564 Ventures for the single campaign conducted in September and October, 2019, ending on October 7, 2019.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to

1    [defendant's] implicit position, the Due Process clause of the 5th Amendment does not

2    impose upon Congress an obligation to make illegal behavior affordable, particularly for

3    multiple violations.").

4        Moreover, the narrative of the Defendant's telemarketing compliance efforts could

5    present a case for reduction of any damages awarded after trial and some courts have

6    applied this principle in the TCPA context. For example, the Court explained in *Golan v.*

7    *Veritas Entm't, LLC* before reducing the damages awarded in that TCPA class action

8    lawsuit to $10 a call:

> Three courts have reduced damages awards in TCPA cases. In *Texas v.*
> *American Blastfax, Incorporated*, plaintiff, the state of Texas, brought suit
> against defendants, American Blastfax, Incorporated and two of its officers
> and directors. 164 F.Supp.2d 892, 894 (W.D. Tex. 2001). The district court
> held defendant Blastfax had violated the TCPA by sending unsolicited
> intrastate fax advertisements. *Id.* at 894. Defendants presented evidence the
> average cost of receiving an unwanted fax is seven cents per page. *Id.* at 900.
> Although it stated the TCPA provides for liquidated damages of $500 for
> each violation, the district court found it would be inequitable and
> unreasonable to award that amount for each violation. *Id.* Instead, the district
> court interpreted the provision as providing for "up to" $500 per violation.
> *Id.* The district court found a reasonable award was seven cents per violation,
> which it trebled because defendants' conduct was willful and knowing, for a
> total amount of $495,375…
>
> The next case which reduced damages for TCPA violations is *Maryland v.*
> *Universal Elections, Incorporated*, 862 F.Supp.2d 457 (D. Md. 2012). The
> state of Maryland brought a civil enforcement action against Universal
> Actions, Incorporated and two individuals, alleging defendants violated the
> TCPA by making 112,000 prerecorded telephone calls to residents on
> Election Day. *Id.* at 459. The district court found defendants violated the
> TCPA. *Id.* at 463-464. The base damages award could have been
> $34,000,000 and could have exceeded one hundred million dollars if trebled,
> because the violations were knowing. *Id.* at 464. The state of Maryland
> requested $10,424,550. *Id.* at 465. The district court awarded $1,000,000. *Id.*
> at 466. The district court reasoned "a $10 million penalty is disproportionate

27

to the size of the company and the defendants' presumptive ability to pay." *Id.*

The third case is *United States v. Dish Network, LLC*, No. 09-3073, 256 F. Supp. 3d 810, 2017 U.S. Dist. LEXIS 85543, 2017 WL 2427297 (C.D. Ill. Jun. 5, 2017). Plaintiffs, the United States and the States of California, Illinois, North Carolina, and Ohio, alleged defendant, Dish Network, LLC, violated the TCPA, as well as several state laws and regulations, by placing telephone calls to telephone numbers on the do-not-call list. 2017 U.S. Dist. LEXIS 85543, [WL]at *1. After a bench trial, the Central District of Illinois entered judgment in favor of the plaintiffs and against the defendant. *Id.* Plaintiffs asked for a damages award of $2.1 billion. 2017 U.S. Dist. LEXIS 85543, [WL] at *139. The district court awarded civil penalties and statutory damages of $280,000,000, approximately 20 percent of the defendant's after-tax profits for 2016, finding this amount was "appropriate and constitutionally proportionate, reasonable, and consistent with due process." *Id.* The district court further reasoned "[t]he amount represents a significant penalty for the millions and millions of Do-Not-Call violations caused by Dish over years and years of careless and reckless conduct." *Id.* Finally, the district court stated "[t]he injury to consumers, the disregard for the law, and the steadfast refusal to accept responsibility require a significant and substantial monetary award."

*Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sep. 7, 2017).

By reaching this Settlement Agreement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Defendant. These avenues of relief provide a benefit to Class Members. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the Defendant's financial position, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement Agreement is highly beneficial to the Class.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VII.    Schedule of Events**

In connection with preliminary approval of the settlement, the Court must set a

Final Approval Hearing date, dates for mailing and publication of the notices and

deadlines for filing claims, objecting to the settlement, opting out of the Class, and filing

papers in support of the Settlement. The Parties propose the following schedule:

| | |
|---|---|
| Last day for Divvydose to provide the Settlement Administrator the Class List and Call Record Database | On or before 14 days after entry of the Preliminary Approval Order |
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone line, and email address and P.O. Box to accept inquiries from Settlement Class Members | On or before 30 days after entry of the Preliminary Approval Order |
| Settlement Administrator provides Email Notice and Postcard Notice to Settlement Class Members | On or before 30 days after entry of the Preliminary Approval Order |
| Last day for Settlement Class Counsel to file motion in support of Fees, Cost and Expense Award and apply for Service Payment | On or before 69 days after entry of the Preliminary Approval Order |
| Last day for Settlement Class Members to file Claim Forms, object, or request exclusion from the Settlement Class | On or before 90 days after entry of the Preliminary Approval Order |

| Last day for Settlement Class Counsel to file motion in support of Final Approval | On or before 14 days before Final Approval Hearing |
|---|---|
| Last day for Divvydose to file optional brief in support of Settlement | On or before 7 days before Final Approval Hearing |
| Final Approval Hearing | At least 135 days after entry of the Preliminary Approval Order. |

## VIII.  Conclusion

For the reasons set forth above and the entire record in this litigation, the settlement warrants this Court's preliminary approval, and Plaintiff's counsel respectfully requests that the motion be granted. A proposed Preliminary Approval Order is attached as Exhibit 3.

RESPECTFULLY SUBMITTED AND DATED this 23rd day of April, 2020.

By:  /s/ *Anthony I. Paronich*
Anthony I. Paronich

Andrew W. Heidarpour,
Email: AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

Nathan Brown (State Bar No. 033482)
E-mail:
Nathan.Brown@BrownPatentLaw.com

Brown Patent Law
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich