Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorney for Plaintiff (co-counsel listed below)*

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| Sana Mujahid, | No. 2:19-cv-5454-PHX-NVW |
| Plaintiff, | Hon. Neil v. Wake |
| vs. | **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW** |
| Divvymed, LLC d/b/a Divvydose, | |
| Defendant. | |

## I. INTRODUCTION

After extensive first party and third-party discovery, and hard fought arm's length settlement negotiations, including a failed April 3, 2020 mediation with Jill Sperber of Judicate West and Sperber Dispute Resolution in Santa Ana, CA, a settlement was eventually reached through continued negotiations overseen by Ms. Sperber of this Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, class action. The Settlement Agreement establishes a non-reversionary Settlement Fund in the amount of $750,000, which will also be used to pay the settlement costs.

On May 21, 2020, this Court preliminarily approved the settlement and authorized the distribution of notice and claim forms to potential Settlement Class Members. *See* ECF No. 27. In turn, KCC Class Action Services, LLC ("KCC")—the Court-appointed class administrator, distributed class notice in accordance with this Court's preliminary approval order. The TCPA provides for $500 in damages unless a violation is committed on a "knowing" or "willful", and at that point the amount can be trebled "up to" $1,500. *See* 47 U.S.C. 227(b)(3). As of the date of this filing, participating class members will be receiving $532.99 per call they received, with some class members receiving as much as $4,796.91[1], more than all their available statutory damages for a negligent TCPA violation. This tremendous per claimant recovery far exceeds most TCPA class action settlements that have garnered final approval. Not surprisingly, the reaction of class members has been uniformly positive, as there have been *no objections or requests for exclusion*.

Plaintiff Sana Mujahid respectfully requests that this Court finally approve the settlement and enter a Fina Approval Order attached as Exhibit 1 and a Final Judgment attached as Exhibit 2.

---

[1] *See* Declaration of Jay Geraci ("Geraci Dec.") at ¶ 21, filed contemporaneously herewith.

1

## II.     SUMMARY OF THE CASE AND SETTLEMENT

As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

The TCPA prohibits, *inter alia*, initiating any telephone solicitation to a cell phone using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b)(1). The TCPA also makes it unlawful to receive more than one telephone call within any twelve-month period by or on behalf of the same entity after placing your number on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5). Finally, the TCPA prohibits making any telemarketing calls unless a company has adequate policies and procedures in place in compliance with 47 CFR § 64.1200(d), which requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6). The TCPA provides a private cause of action to persons who receive such calls. *Id.* and 47 U.S.C. § 227(b)(3). The TCPA provides for $500 in damages unless a violation is committed on a "knowing" or "willful", and at that point the amount can be trebled "up to" $1,500. *See* 47 U.S.C. 227(b)(3). A caller has a complete defense to a TCPA claim if it can demonstrate that it made the subject calls with the prior express consent of the called party. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).

DivvyMed is an online pharmacy that allegedly utilizes third parties and their vendors to place calls on its behalf. On April 3, 2020, the parties mediated this matter

with Jill Sperber of Judicate West and Sperber Dispute Resolution in Santa Ana, CA. While that mediation did not end with a settlement, the parties continued negotiations overseen by Ms. Sperber that culminated in the Settlement Agreement approved by this Court. The Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation may have ultimately delivered none given the risks presented by the available defenses, the uncertainties of contested litigation, and the everchanging TCPA landscape, including the Supreme Court's pending decisions.

The Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation may have ultimately delivered none given the risks presented by the available defenses, the uncertainties of contested litigation, and the everchanging TCPA landscape, including the Supreme Court's pending decisions.

### III. THE SETTLEMENT REQUIRES DIVVYMED TO PAY $750,000 FOR THE BENEFIT OF SETTLEMENT CLASS MEMBERS. PARTICIPATING CLASS MEMBERS STAND TO GET APPROXIMATELY $532.99 PER CALL THEY RECEIVE.

In the Preliminary Approval Order, the Court certified the following Settlement Class for settlement purposes only:

> All persons in the United States who were called by 1564 Ventures, Inc. with a recorded message about Divvydose during the Class Period.

The Class Period is June 26, 2019 through November 1, 2019. *See* ECF No. 26-1 at ¶ 1.8. The proposed settlement encompasses 28,346 individuals.

The proposed settlement establishes a non-reversionary $750,000.00 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) settlement administration expenses; (3) a Fees, Costs, and Expenses Award to Settlement Class Counsel of one-third of the total amount of the Settlement

Fund ($250,000.00) in addition to out of pocket expenses (up to $12,375.00), subject to Court approval; and (4) a court-approved Service Payment to the Plaintiff of up to $5,000.

The release is appropriately tailored to this case involving alleged violations like those alleged and is limited to those Settlement Class Members identified in the Class, which is compiled of data exchanged in discovery. In exchange for settlement benefits, the Settlement Class Members will release DivvyMed from any and all telephone calling claims as well as 1564 Ventures and Multira, but only for calls they made on behalf of DivvyMed and is further limited only to the individuals contained on the Class List. *See* ECF No. 26-1 at ¶ 2.2

No class members opted out or objected to the settlement, and 334 have made claims, with 98 being valid. *See* Geraci Dec. at ¶ 22. If this settlement is approved as the Plaintiff requests, each participating class member will receive $532.99 per call received. *Id.*

## IV.   THE NOTICE PROGRAM WAS SUCCESSFUL.

KCC delivered notice to Settlement Class Members in accordance with this Court's preliminary approval order. *See* Geraci Dec.

KCC Complied with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, by compiling a CD-ROM containing the following documents: Complaint, Plaintiff's Notice of Motion and Motion for Preliminary Approval, Settlement Agreement and Release, Long-Form Notice, Email Notice, and Postcard Notice, which accompanied a cover letter and service list (collectively, the "CAFA Notice Packet"). *See* Geraci Dec. at ¶2. There have been no responses to the CAFA Notice Packet. *Id.* at ¶ 3.

KCC also used DivvyMed's data and the Plaintiff's third party discovery efforts to provide direct notice to class members. On May 21, 2020, KCC received a list of 25,974 records that contained name, address, phone number, and email address. *Id.* at ¶ 5. KCC determined that 3,313 unique phone numbers located by the Plaintiff's third party

discovery efforts needed a reverse phone search through a vendor in order to obtain a name and mailing address and as a result, KCC was able to update 2,677 records with a name and mailing address. *Id.* at ¶ 6. On June 8, 2020, KCC performed a reverse E-mail lookup of 2,677 records where a name and address existed but no E-mail address was available and as a result, KCC was able to update 1,842 records with an E-mail address. *Id.* at ¶ 7.

     KCC formatted the list for mailing purposes, removed duplicate records, and processed the names and addresses through the National Change of Address Database ("NCOA") to update any addresses on file with the United States Postal Service ("USPS"). *Id.* at ¶ 8. A total of 1,686 addresses were found and updated via NCOA. *Id.* As a result, KCC was able to send an E-mail notice to 27,200 Class Members and 835 Summary Postcard notices to Class Members. *Id.*

     On June 19, 2020, KCC sent 27,200 E-mail notices to those records that contained an E-mail address. *Id.* at ¶ 9. On June 19, 2020, KCC caused the Summary Postcard notice to be printed and mailed to the 835 names and mailing addresses in the Class List where no e-mail address was available. *Id.* at ¶ 13. On June 24, 2020, KCC determined that 23,924 E-mail notices were sent successfully or without a notification of a bounce. 3,276 E-mail notices were not delivered successfully and KCC then sent via mail notice to the 3,275 class members whose records contained a name and mailing address. *Id.* at ¶ 10-11. To further encourage participation in the settlement, on July 27, 2020, KCC sent 23,889 E-Mail reminder notices to Class Members who as of July 27, 2020 had not yet filed a claim. *Id.* at ¶ 12.

     Class members also received notice electronically. On June 18, 2020 KCC established a website dedicated to this matter to provide information to the Class Members and to answer frequently asked questions. *Id.* at ¶ 16. The website URL was set forth in the Claim Form, Exclusion Request Form, and Long Form Notice. *Id.* Visitors of the website can download copies of the Notice, Claim Form, and other case-related documents as well as submit claims online and exclude themselves from the settlement. As of date of this submission, the website has received 10,777 visits. *Id.*

5

To answer questions about the settlement, KCC established and continues to maintain a toll-free telephone number 1-844-799-2426 where class members can request a Notice Packet or seek assistance from a live operator during regular business hours. The telephone hotline became operational on June 18, 2020 and is accessible 24 hours a day, 7 days a week. *Id.* at ¶ 17. As of date of this submission, KCC has received a total of 88 calls to the telephone hotline. *Id.*

The lack of opposition to the settlement demonstrates not only the effectiveness of the notice, but also Settlement Class Members' satisfaction with the settlement.

## V. THE SETTLEMENT SATISFIES ALL REQUIREMENTS AND MERITS FINAL APPROVAL

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement may be approved if it is "fair, reasonable, and adequate." *Russell v. Kohl's Dep't Stores, Inc.,* 755 F. App'x 605, 608 (9th Cir. 2018). To that end, the Ninth Circuit has identified eight factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). As well, Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e). In applying these factors, this Court should be guided foremost by the general principle that federal courts favor settlements of class actions. *See Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in

6

class action suits"). Here, the relevant factors firmly support the conclusion that the settlement is fundamentally fair, reasonable, and adequate, and that this Court should approve it.

### a. The strengths of Plaintiff's case and the inherent risks of continued litigation favor final approval.

The first, second and third *Hanlon* factors support final approval. While DivvyMed has agreed to settle, it was not without significant defenses. First, while this settlement was agreed to, the constitutionality of the entire TCPA was being reviewed by the Supreme Court in *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (*Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19- 631 (petition for cert filed Nov. 14, 2019)).

Second, the Circuit decision of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) was also accepted by the Supreme Court for the 2021 term. The dialing system allegedly used by 1564 Ventures is less likely to be found to be an ATDS in the 3rd and 11th Circuit due to recent developments in those Circuits. Specifically, those decisions are *Dominguez v. Yahoo, Inc*., 894 F.3d 116 (3rd Cir. 2018), and *Glasser v. Hilton Grand Vacations Company, LLC*, 2020 WL 415811 (11th Cir. Jan. 27, 2020). These cases should be considered a significant risk if the case here were litigated to judgment, because there was a high likelihood that, given the split in authority, Supreme Court review will result in a less favorable ATDS interpretation.

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that

issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Even if the class were certified, the Plaintiff would still have a substantial obstacle regarding DivvyMed's vicarious liability for the alleged conduct of the vendors. The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 193 L. Ed. 2d 571 (2016), held traditional agency and vicarious liability principles are required in order to be found liable under the TCPA. However, DivvyMed did not have contractual privity with the entity that physically initiated the calls, which would make such a finding more difficult.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Moreover, the narrative of the Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context. For example, the Court explained in *Golan v. Veritas Entm't, LLC* before reducing the damages awarded in that TCPA class action lawsuit to $10 a call.

By reaching this Settlement Agreement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Defendant. These avenues of relief provide a benefit to Class Members. Given the

alternative of long and complex litigation before this Court, the risks involved in such litigation, the Defendant's financial position, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement Agreement is highly beneficial to the Class.

### b. The immediate, meaningful cash relief afforded by the settlement, approximately $532.99 per call for each participating Settlement Class Member, favors final approval.

The fourth *Hanlon* factor, the amount offered in the settlement, also favors approval. To reiterate, DivvyMed is paying $750,000 to resolve this matter. Importantly, no amount of this fund will revert to DivvyMed. Despite the obstacles faced by the Plaintiff, as outlined above, Class Counsel, with the assistance of a highly experienced mediator, negotiated a settlement that exceeds many analogous TCPA class actions. Specifically, by dividing the settlement payment ($750,000) by 28,346 (the Settlement Class Members) the amount is approximately $26.50.

In comparison, in *Picchi v. World Fin. Network Bank*, No. 11-CV-61797, Docs. 131, 161 (S.D. Fla. Jan. 30, 2015 and Dec. 18, 2015), the court granted final approval in a TCPA class action for $2.63 per person—a small fraction of the amount Settlement Class Members will receive here. *See also, e.g., Williams v. Bluestem Brands, Inc.,* No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (approximately $7 per class member); *Prather v. Wells Fargo Bank, N.A.,* No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per class member); *Luster v. Wells Fargo Dealer Servs., Inc.,* No. 15-1058, Doc. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per class member); *James v. JPMorgan Chase Bank, N.A.,* No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55 per class member); *Cross v. Wells Fargo Bank, N.A.,* No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.,* No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Wilkins v. HSBC Bank Nev., N.A.,* No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($2.95 per class member); *Adams v. Allianceone Receivables Mgmt., Inc.,* No. 3:08-cv-00248-

JAH-WVG, Doc. 113 (S.D. Cal. Apr. 23, 2012) (approving settlement equal to approximately $1.48 per TCPA class member); *Duke v. Bank of Am., N.A.,* No. 12-4009, Docs. 51, 59 (N.D. Cal. Feb. 19, 2014 and Aug. 29, 2014) ($4.15 per class member).

      Furthermore, after deducting the requested attorneys' fees, litigation costs and expenses, costs of notice and claims administration, and service award, *see* ECF No. 29, participating Settlement Class Members will each receive approximately $532.99 per call, with some class members receiving as much as $4,796.91, which surpasses the high end of TCPA class action settlement recoveries generally. *See In re Capital One Tel. Consumer Prot. Act Litig.,* 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per claimant falls "within the range of recoveries" in a TCPA class action); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (noting that while "thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within the range of recoveries' in TCPA class actions"); *Hashw v. Dep't Stores Nat'l Bank,* 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Gehrich v. Chase Bank USA, N.A.,* 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each, noting that such a figure "appears to be on the low end of monetary recovery for TCPA class action settlements"); *Rose v. Bank of Am. Corp., N*os. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (between $20 and $40 per claimant); *Steinfeld v. Discover Fin. Servs.,* No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (less than $50 per claimant).[2]

---

[2] *See also Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving a TCPA class action settlement that provided up to $15 cash payment); *In re Jiffy Lube Int'l, Inc.,* No. 11-md-02261, ECF No. 97 (S.D. Cal. Feb. 20, 2013) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Garret v. Sharps Compliance, Inc.,* No. 1:10-cv-04030, Doc. 74 (N.D. Ill. Nov. 5, 2012) ($28.13 recovery per claimant); *Agne v. Papa John's Int'l, et al.,* No. 2:10-cv-01139, Doc. 389 (W.D. Wash. Oct. 22, 2013) ($50 cash recovery plus $13 in merchandise per claimant); *Clark v. Payless ShoeSource, Inc.,* No. 2:09-cv-00915, Doc.

At bottom, the settlement constitutes a tremendous result. *See Markos v. Wells Fargo Bank, N.A.,* No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the approximately $532.99 per call here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"). Because this settlement provides superior results to many other approved TCPA settlements, the fourth *Hanlon* factor strongly favors final approval.

### c. The posture of this case and experience and views of counsel favor final approval of the settlement.

Next, the fifth and sixth *Hanlon* factors likewise support final approval of the settlement. This litigation focused on the conduct of one DivvyMed agent and vendor, Multira, Inc. and 1564 Ventures, Inc. 1564 Ventures allegedly placed the pre-recorded telemarketing call, which was then transferred directly to DivvyMed's own call center in hopes of obtaining a new client. In discovery, the parties exchanged information regarding DivvyMed's relationship with Multira, its efforts to comply with the TCPA as well as documents that identify putative class members. The Plaintiff also issued subpoenas to Multira, 1564 Ventures as well as the pre-recorded calling provider used by 1564 Ventures. In total, the Plaintiff obtained over 10,000 pages of production. *See* ECF No. 27. The settlement was achieved with a clear view of the strengths and weaknesses of the Plaintiff's claims.

Thus, both class counsel, who have substantial experience litigating class actions, particularly those under the TCPA[3], *see* ECF No. 30 and 31, and this Court are

---

72 (W.D. Wash. July 27, 2012) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.,* No. 2:09-cv-00911, Doc. 114 (W.D. Wash. Nov. 5, 2012) ($40 or $80 merchandise certificate per claimant).

[3] One of Class Counsel in this case was part of the team that tried to verdict *Thomas Krakauer v. Dish Network, L.L.C.*, Civil Action No. 1:14-CV-333, Dkt. No. 292 (M.D.NC. September 9, 2015), a certified TCPA class action which resulted in more than a $61,000,000 award for approximately 50,000 telemarketing calls after a five-day trial, which is one of the few TCPA class action matters to go to trial. This decision was

adequately informed to evaluate the fairness of the settlement. Moreover, both Plaintiff and class counsel strongly believe that the settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class. *See Wilson v. Gateway, Inc.,* No. CV 09-7560-GW(VBKX), 2014 WL 12704846, at *5 (C.D. Cal. Oct. 6, 2014) ("Class Counsel's experience and recommendation thus weigh in favor of finding the settlement fair.") (*citing Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel . . . because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.")); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.")

Further, the parties' arm's-length settlement negotiations through experienced counsel, and after attending mediation with Jill Sperber, demonstrate the fairness of the settlement, and that the settlement is not a product of collusion. *See Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *see also Bykov v. DC Transp. Servs., Inc.,* No. 2:18-CV-1691 DB, 2019 WL 1430984, at *5-6 (E.D. Cal. Mar. 29, 2019) ("participation in mediation tends to support the conclusion that the settlement process was not collusive"); *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,* No. 2672 CRB (JSC), 2016 WL 6442227, at *4 (N.D. Cal. Oct. 25, 2016) (same).

As a result, Plaintiff and her counsel submit that the substantial value of the recovery here reflects their confidence in the claims and the fairness of the settlement.

---

upheld by the Fourth Circuit Court of Appeals in May of 2019. *See Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019). The United States Supreme Court rejected *certiorari* of this matter in December of 2019. *See DISH Network L.L.C. v. Krakauer,* 140 S. Ct. 676 (2019). Class Counsel have recovered over $150,000,000 in TCPA judgments and settlements for recipients of robocalls.

12

*See Schuchardt v. Law Office of Rory W. Clark,* 314 F.R.D. 673, 685 (N.D. Cal. 2016) ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement."). Given that these opinions were informed by thorough discovery and the briefing of numerous aspects of the case, these factors support final approval of the settlement.

      **d. The lack of a government participant supports final approval of the settlement.**

While no governmental agency is a party to this lawsuit, KCC notified all pertinent government officials of the settlement as required by CAFA, as discussed above. No governmental entity raised objections or concerns about the settlement. This factor therefore supports final approval.

      **e. The reaction of Settlement Class Members strongly supports final approval of the settlement.**

After a robust direct notice program reaching 96% of class members and an internet notice campaign, *no class members objected or requested exclusion*. The lack of objections and no exclusions strongly support approval of the settlement. *See Arnold v. Ariz. Dep't of Pub. Safety,* No. CV-01-1463-PHX-LOA 2006 WL 2168637, at *10 (D. Ariz. July 31, 2006) (Anderson, M.J.) ("The absence of any objections suggests that the class members are unopposed to terms of the Settlement Agreement. The absence of objections weighs in favor of approving the Settlement Agreement."); *Wood v. Ionatron, Inc.,* No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (Jorgenson, J.) (same).

Accordingly, this positive reaction supports final approval of the settlement.

### f. The settlement treats Settlement Class Members equitably.

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all Settlement Class Members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each Settlement Class Member will be treated equitably as each participating Settlement Class Member will receive an equal and identical portion per call of the $750,000 common fund after deducting attorneys' fees, litigation costs and expenses, a service award to Plaintiff, and the costs of class notice and administration. Moreover, the release affects each Settlement Class Member in the same way. As such, this factor supports final approval of the settlement. *See Hale v. State Farm Mutual Automobile Ins.* Co., No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### g. The Plaintiff and her counsel adequately represented the Settlement Class.

Lastly, Rule 23(e)(2)(A) requires that this Court determine that "the class representatives and class counsel have adequately represented the class." This Court previously found that Plaintiff and her counsel adequately represented the class in its Preliminary Approval Order. Based on the excellent results obtained for Settlement Class Members and the high-quality work necessary to do so, Plaintiff and her counsel have demonstrated that they adequately represented the class, and this Court should grant final approval to the settlement.

## VI. DISTRIBUTION OF CLASS NOTICE MORE THAN SATISFIED DUE PROCESS REQUIREMENTS

Pursuant to Rule 23(e), in granting preliminary approval, this Court directed that KCC initiate the proposed notice plan, finding that it was the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice by the proposed settlement. *See* ECF No. 27 at *2. Such notice must be—and was—the "best notice practicable," see Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Following this guidance, KCC distributed notice in a manner that exceeded this standard. In particular, KCC used all reasonable efforts to provide direct notice to each potential Settlement Class Member. *See generally* Geraci Dec. KCC also supplemented this direct notice through a dedicated settlement website and toll-free telephone number. *Id.*

As a result of this robust notice campaign, 96% of class members received direct notice and claims were consistent with other TCPA settlements. *See Bayat v. Bank of the W.,* No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) *Barani v. Wells Fargo Bank, N.A.,* No. 12-cv-02999-GPC-KSC, Doc. 32 (S.D. Cal. Feb. Case 2:17-cv-00913-SPL Document 122; *Knuston v. Schwan's Home Serv.,* No. 12-cv00964-GPCDHB, Doc. 151 (S.D. Cal. Feb. 5, 2015); *Adams v. AllianceOne Receivables Mgmt., Inc.,* No. 08-cv-00248, Doc. 137 (S.D. Cal. Sept. 28, 2012).

## VII. CONCLUSION

For the reasons set forth above and the entire record in this litigation, Plaintiff and Class Counsel respectfully requests that this Court finally approve the settlement and enter a Fina Approval Order attached as <u>Exhibit 1</u> and a Final Judgment attached as <u>Exhibit 2</u>.

RESPECTFULLY SUBMITTED AND DATED this 10th day of August, 2020.

By:  /s/ *Anthony I. Paronich*
Anthony I. Paronich

Andrew W. Heidarpour,
Email: AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

Nathan Brown (State Bar No. 033482)
E-mail: Nathan.Brown@BrownPatentLaw.com
Brown Patent Law
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474

### CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich